[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for termination of the parental rights of Dana S., the female biological parent of the minor children, Kristen S., born February 2, 1992, and Kyle N., born January 1, 1989. The petitions also seek to terminate the parental rights of William L., male biological parent of Kristen S., and Nicholas N., male biological parent of Kyle N. The petitions were filed by the Department of Children and Families (hereinafter the "Department") on July 29, 1999.
The Department seeks this termination on the grounds that both children have been abandoned by the mother and both fathers in the sense that the parents failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of each child; that both children were previously adjudicated neglected and that each parent has failed to achieve such degree of personal rehabilitation as would encourage the belief that, within an reasonable time, considering the age a needs of the children, they could assume a responsible position in the life of each child; and there is no ongoing parent-child relationship with respect to the mother and both fathers that ordinarily develops as a result of a parent having met on a continuing, day to day basis the physical, emotion, moral or educational needs of the children and to allow further time for the establishment of re-establishment of the parent-child relationship would be detrimental to the best interests of each child.
The petitions were duly served on all three (3) parents. On August 26, 1999, the Department amended its petition regarding Kyle N. to allege consent by the father, and Nicholas N., father of Kyle N., consented to CT Page 8438 the termination of his parental rights to his child. A trial was held on December 9, 1999, January 14, 2000, and March 20, 2000. Dana S., mother, was defaulted for failure to appear, although she was represented by counsel. The father William L. contested the petition and was also represented by counsel. The court has jurisdiction over this matter, there is no pending action affecting custody of these children in any other court, and reasonable efforts have been made to locate the mother and reunify her with her children.
The court, having reviewed the verified petition, summary of facts and social study, and exhibits presented at trial; and having heard the testimony of Maria S., maternal grandmother, Lisa Karvoski-Grasso, therapist for Kristen S., Shirley DeFlavis, Social Work Supervisor for the Department, Melanie Zelanko, Social Worker for the Department, and William L., Kristen's father, makes the following factual findings and reasonable inferences supported by those findings:
FINDINGS OF FACT
On October 9, 1996, orders of temporary custody were granted to the Department and Kyle and Kristen were placed into the care and custody of the Department. They have remained out of their parents' care since that date. They were committed to the Department on April 10, 1997; that commitment expired on April 10, 1998; another order of temporary custody was granted on April 16, 1998; and they were again committed to the Department on June 18, 1998. The commitments were extended, effective June 18, 1999 and June 18, 2000.
Kyle lived with his mother and sisters until he was placed in foster care on October 9, 1996. He remained in foster care until December, 1996, when he was placed with his maternal aunt. Due to difficulties in the home, Kyle returned to his former foster home in March, 1997. He remained in this home until his placement January 8, 1999 in relative foster care with his paternal grandmother, Priscilla M., where he remains today, and is doing extremely well.
Kristen, however, until recent months, has not fared well since her removal from home. Her early years were spent with her mother and siblings until her placement in foster care on October 9, 1996. In December, 1996, Kristen was placed in relative foster care with her maternal grandmother, Maria S., along with her sister. Kristen's behaviors were poor in this home, prompting the grandmother to request her removal from the home on three (3) occasions. Kristen was finally removed from her grandmother's home on November 17, 1997, and placed again into foster care. Kristen continued to have difficulties in the foster home and at school, acting out sexually, making inappropriate CT Page 8439 sexual comments, and being aggressive and disruptive at school. During this period she received therapy at North Central Mental Health. On June 1, 1998, Kristen changed foster homes. While in the next foster home, Kristen's behavior continued and worsened. During this placement she attended the Institute of Living Extended Day Program, followed by the Village for Families and Children Extended Day Program. The foster parents were very supportive of Kristen throughout her stay, however, due to her behaviors, they requested her removal from their home on December 31, 1998. She was moved to an interim foster home and was then placed at the Curtis Home in Meridan in February, 1999. Following her removal from her grandmother's home, Kristen maintained contact with her grandmother by telephone and visits. In June, 1999, Maria S. began therapy with Kristen at the Curtis Home, and after a series of visits, Kristen was again placed with her maternal grandmother on September 21, 1999, where she continues to have specialized needs, but appears to be doing well.
The Department's plan is for Kyle to be adopted by his paternal grandmother, and for Kristen to be adopted by her maternal grandmother, if parental rights are terminated.
ADJUDICATION: Kyle
With respect to the statutory grounds for termination of parental rights, the court finds, by clear and convincing evidence, that as of July 29, 1999, Kyle has been abandoned by his mother. Dana S. last visited with Kyle on October 15, 1997, although she was permitted and encouraged to by the Department; and last spoke with him on the telephone on August 27, 1998. Ms. S. has not participated in the treatment planning process for Kyle since February 22, 1996, and has not called the Department or foster parent to inquire as to the welfare of said child. Ms. S. did not send a birthday card or present to Kyle in 1998 and 1999; nor a Christmas card or present to him in 1997, 1998 or 1999. Dana S. has totally failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of this child.
The court finds by clear and convincing evidence, that as of July 29, 1999, Kyle's mother has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering his age and needs, she could assume a responsible position in his life. On June 18, 1998, upon Kyle's second commitment to the Department, Expectations were issued for mother by the court in order to help her achieve reunification with her children. Dana S. failed to keep her whereabouts known to the Department. She failed to visit her child as often as permitted, and failed to maintain telephone contact with him or the Department. She failed to participate in an ABH evaluation to address her chronic substance abuse problem. She failed to CT Page 8440 complete a hair analysis at New Directions. Mother reported that she attended counseling at Lowell House in Massachusetts, however failed to provide the Department with any verification of this. Mother failed to attend scheduled appointments for urine screens and evaluation. Mother failed to participate in parenting classes or individual counseling. Mother failed to maintain adequate housing. Finally, she has been involved with the criminal justice system in that she was charged in Dracut, Massachusetts on June 22, 1999, with conspiracy to commit burglary and accessory after the fact, for which she received probation. As of December, 1999, arrest warrants were outstanding in Massachusetts for Ms. S. for violation of probation, and in Vernon, Connecticut for failure to appear. Dana S. has totally failed to achieve any degree of personal rehabilitation.
The court finds by clear and convincing evidence that there is no ongoing parent-child relationship between Dana S. and Kyle. Kyle does not express a desire to reunify with his mother, nor does he ask to see or telephone her. He is emotionally bonded with his paternal grandmother, and has expressed a desire to remain with her.
ADJUDICATION: Kristen
With respect to the statutory grounds for termination of parental rights, the court finds, by clear and convincing evidence, that as of July 29, 1999, Kristen has been abandoned by her mother, Dana S. Dana S. last visited with Kristen in October, 1997, and last spoke with her by telephone on August 27, 1998. She has not called the Department or the foster parent to inquire as to the welfare of her child since July, 1998. Ms. S. did not send a birthday card or present to Kristen in 1998, nor a Christmas card or present in 1997, 1998 or 1999. She has not participated in the treatment planning process for this child since February 22, 1996. In June, 1998, mother was asked to call Kristen's therapist to give some childhood information in an effort to assist the therapist in the child's treatment. Mother failed to comply. Dana S. has totally failed to maintain any degree of interest, concern or responsibility as to the welfare of her child as evidenced by her lack of involvement in her life.
The court finds by clear and convincing evidence, that as of July 29, 1999, Kristen's mother has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering her age and needs, she could assume a responsible position in her life. On June 18, 1998, upon Kristen's second commitment to the Department, Expectations were issued for mother by the court in order to help her achieve reunification with her children. Dana S. failed to keep her whereabouts known to the Department. She failed to visit her CT Page 8441 child as often as permitted, and failed to maintain telephone contact with her or the Department. Mother failed to participate in parenting classes or individual counseling. She failed to contact Kristen's therapist when requested to assist the therapist in treating the child for her many specialized needs. She failed to participate in an ABH evaluation to address her chronic substance abuse problem. She failed to complete a hair analysis at New Directions. Mother reported that she attended counseling at Lowell House in Massachusetts, however failed to provide the Department with any verification of this. Mother failed to attend scheduled appointments for urine screens and evaluation. Mother failed to maintain adequate housing. Finally, mother has been involved with the criminal justice system in that she was charged in Dracut, Massachusetts on June 22, 1999, with conspiracy to commit burglary and accessory after the fact, for which she received probation. As of December, 1999, arrest warrants were outstanding in Massachusetts for Ms. S. for violation of probation, and in Vernon, Connecticut for failure to appear. Dana S. has totally failed to achieve any degree of personal rehabilitation.
The court finds by clear and convincing evidence, that as of July 29, 1999, there is no ongoing parent-child relationship between Dana S. and Kristen S. Kristen has not asked to talk with or see her mother. She has not expressed an interest in returning to her mother's care. Kristen's therapist testified that child has exhibited anxiety over the issue of whether she will be able to remain with her grandmother and sister forever.
The court finds by clear and convincing evidence that, as of July 29, 1999, Kristen was abandoned by her father, William L. Mr. L. was incarcerated from before child's birth to October 31, 1997, and again on May 13, 1999 to the present. He has not seen his child since her first commitment to the Department and she has never lived with him. From April 10, 1997, the date of Kristen's first commitment to the Department, to July 29, 1999, the date of the filing of the termination petition, Mr. L. had approximately six (6) contacts with the Department. All of them occurred during the period of time Mr. L. was not incarcerated for nineteen (19) months from October, 1997 to May, 1999. In December, 1997, he called the Department saying he wanted to see his child. Father, however, did not keep his whereabouts known to the Department, nor follow through with any of the Departments requests which would have allowed him to have contact with the child during this brief period of freedom, such as parenting classes and substance abuse evaluation. He was told to take a paternity test. He failed to follow through with the test. He did, however, acknowledge paternity in court on June 18, 1998. Mr. L. did not send Kristen a birthday of Christmas card or gift in 1998 or 1999. Maternal grandmother, Maria S., testified that father never called CT Page 8442 child, sent cards or presents during the time child was with her from December 20, 1996 to November 17, 1997. Father testified, however, that he was told "early on" by the Department and the "program in Watertown" not to send the child things because of statements child had made in therapy. It is not clear what program the father was referring to or when he was told this. Nonetheless, the court finds that the totality of circumstances indicate that William L. did not make reasonable efforts under his limited circumstances, to maintain a reasonable degree of interest, concern or responsibility as to the welfare of his child.
The court finds by clear and convincing evidence, that as of July 29, 1999, the father failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering Kristen's age and needs, he could assume a responsible position in her life. Mr. L. has been unavailable to Kristen for most of her life, due to the fact that he repeatedly engaged in conduct which resulted in his incarceration. From June, 1997 to September, 1997, he had progressed to the point of being released to a half-way house, only to be re-incarcerated in October, 1997. Mr. L. failed to keep the Department informed of his whereabouts. No visitation was set between the father and child due to Kristen's history of instability and the lack of relationship between the child and her father. Mr. L. followed through with no services which might have helped this circumstance. He has never participated in the child's treatment planning. He has not been in a position to establish adequate housing. He did not participate in parenting or individual counseling. He failed to attend the ABH substance abuse evaluation. He has continued to be involved with the criminal justice system. As of the date of the filing of the petition, father had completely failed to rehabilitate himself
The court finds by clear and convincing evidence, that as of July 29, 1999, there was no ongoing parent-child relationship between Kristen and her father. Since Kristen was committed. Mr. L. has not seen his daughter. Kristen has almost no memory of father and has only visited with him a limited number of times in her life. The only memories she does have of him are negative. Kristen remembers being taken to prison by her paternal grandmother to see father, and hearing father say that when he gets out of prison, he was going to stab mother in the back. Father denies that this ever happened, however, for whatever reason, this is the child's memory of him. Kristen does not refer to Mr. L. as father, but rather calls him "Bummer", a name her mother used for him.
REQUIRED FINDINGS
The court makes the following factual findings based upon the clear and convincing evidence required by C.G.S. Sec. 17a-122 (e): CT Page 8443
(1) Appropriate and timely services were provided to mother and father by the Department, including parenting classes, individual counseling, substance abuse evaluation, testing and counseling, and supervised visitation. The opportunity for father to participate in services was limited by his incarceration, however, he was encouraged to participate in services available to him in prison, and services were offered to him when he was not in prison.
(2) The court finds by clear and convincing evidence that the Department made reasonable efforts to reunify the children with the mother. Mother has made no efforts to avail herself of services offered to assist her in reuniting with her children; and has made minimal efforts to maintain contact with her children or the Department. Mother received ongoing and significant services for reunification, but did not take the necessary steps to rehabilitate herself. William L. has been unavailable for reunification services for all but nineteen (19) months of the period of commitment. During his brief period of freedom, he failed to avail himself of the suggested services to work toward reunification with his child, Kristen.
(3) The Department set reasonable and realistic goals embodied in the Expectations dated June 18, 1998. Mother and father have been unable to successfully comply with or benefit from services offered.
(4) Findings regarding the feelings and emotional ties of the children with respect to the parents, any guardian of the person and any person who has exercised physical care, custody and control of the child for at least one year and with whom the child has developed significant emotional ties. Kyle does not express a desire to reunify with his mother, nor does he ask to see or speak with her. Kyle is very close to his paternal grandmother and has expressed a desire to remain with her.
Kristen has not asked to talk with or see her mother. She has not expressed an interest in returning to her mother's care. Kristen's therapist testified that child has exhibited anxiety over the issue of whether she will be able to remain with her grandmother and sister forever. Kristen's only memories of her father are negative. She rarely speaks of him in therapy, has told her therapist that she hates him, and has told her maternal grandmother that she never wants to go see him again. Kristen is bonded to her grandmother and wishes to remain with her.
(5) Kyle is now eleven (11) years old and Kristen is eight (8) years old.
(6) Findings regarding efforts of the parents to adjust their CT Page 8444 circumstance, conduct and conditions to make it in the best interest of the child to return to their home in the foreseeable future and (A) the-extent to which the parents have maintained contact with the child as part of an effort to reunite the child with the parents, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child. Since commitment, mother has done nothing to address her chronic substance abuse problem, and has not followed through with any of the services offered her to assist her in reuniting with her children. She has not contacted the Department about her children since September, 1998; has not contacted either grandmother and is currently whereabouts unknown.
William L., father of Kristen, was incarcerated when Kristen was committed to the Department the first time on April 10, 1997. He was released in October, 1997 and again incarcerated nineteen (19) months later in May, 1999. He failed to participate in a substance abuse evaluation and parenting classes as requested by the Department during his period of freedom. He engaged in illegal activities which resulted in his incarceration and separation from his child. Mr. L. testified that he has participated in a program regarding addiction, in Narcotics Anonymous, individual and group therapy, had random drug test done, all of which were negative, and has gotten his GED. All of these things have occurred since his last incarceration in May, 1999, only two (2) months before the filing of the termination petition. Although father is certainly to be commended for his efforts to overcome his problems and improve his life, considering the fact that he remains incarcerated and that Kristen has no relationship whatsoever with him, these eleventh hour rehabilitative efforts are simply to late for this child. Kristen is finally experiencing some degree of stability, which is so important for this child with her many specialized needs. It is unreasonable and unrealistic to believe that father, who testified that he doesn't believe that Kristen has any specialized needs, could in the foreseeable (or distant) future be in a position to provide care for this child.
(7) No inappropriate conduct is noted on the part of anyone which would have prevented the mother from having a meaningful relationship with either of her children. The Department took reasonable steps to encourage the mother to have such a relationship with her children. There was no evidence that economic circumstances prevented mother from having a meaningful relationship with her children.
The Department was limited by the incarceration of Kristen's father, in what services they could offer him, but took reasonable steps under the circumstances to assist him in developing a relationship with his daughter. There was no evidence that economic circumstances prevented father from having a meaningful relationship with Kristen, except that he CT Page 8445 understandably may have had limited financial resources to buy presents.
DISPOSITION
Kyle and Kristen have been continuously out of the care of their parents since October 9, 1996. They are both in nurturing, stable environments in which they wish to remain. Neither parent is now, or within a reasonable period of time will be able to provide for them. Kristen's therapist sees her as thriving in her grandmother's care and does not recommend changing that arrangement.
It is therefore, in the best interest of Kyle N. that a termination of parental rights enter with respect to the mother, Dana S., and accordingly, a termination of her parental rights is ordered. The parental rights of the father, Nicholas N. having previously been terminated, the Commissioner of the Department of Children and Families is hereby appointed the statutory parent.
Further, it is in the best interest of Kristen S. that a termination of parental rights enter with respect to the mother Dana S., and the father William L., and accordingly, a termination of their parental rights is ordered. The Commissioner of the Department of Children and Families is hereby appointed the statutory parent.
A permanency plan for these children shall be submitted with sixty (60) days. A review plan shall be filed in accordance with state and federal law.
Patricia Lilly Harleston, Judge